# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF WISCONSIN

In the Matter of the Seizure of
(Address or brief description of property or premises to be seized)

UP TO $18,000 IN FUNDS FROM CASHIER'S CHECK
NUMBER 95611390 DRAWN ON BANK OF AMERICA
ACCOUNT ENDING IN 2906

Case Number: 19-M-029

### APPLICATION FOR A WARRANT
### TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, Daniel S. Schmeichel, being duly sworn depose and say:

I am a Special Agent assigned to the Internal Revenue Service, Criminal Investigation and have reason to believe that in the Eastern District of Wisconsin there is now certain property, namely, up to $18,000 in funds from cashier's check number 95611390 drawn on Bank of America account ending in 2906 that is civilly forfeitable under 18 U.S.C. §§ 981(a)(1)(C) and 984, including cross-references to 18 U.S.C. §§ 1956(c)(7) and 1961(1), and criminally forfeitable under 18 U.S.C. § 981(a)(1)(C) in conjunction with 28 U.S.C. § 2461(c), as property that is derived from proceeds traceable to specified unlawful activity, namely, wire fraud in violation of 18 U.S.C. § 1343, and which property is therefore also subject to seizure for purposes of civil forfeiture under 18 U.S.C. § 981(b)(2) and for purposes of criminal forfeiture under 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(f).

The application is based on these facts:

✓ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Signature of Affiant
Daniel S. Schmeichel, IRS

Sworn to before me, and subscribed in my presence

March 28, 2019  3:20pm.
Date and time issued

at Milwaukee, Wisconsin
City and State

Patricia J. Gorence, U.S. Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEIZURE WARRANTS

I, Daniel S. Schmeichel, having been duly sworn on oath, state as follows:

## Affiant's Background

1. I am a Special Agent with Internal Revenue Service, Criminal Investigation ("IRS-CI"), and have been so employed since February 2010. As an IRS-CI Special Agent, my duties include the investigation of criminal violations of Title 26 (the Internal Revenue Code), Title 31 (the Bank Secrecy Act), and Title 18 of the United States Code, as well as the civil and criminal asset forfeiture provisions related to these statutes. I am currently a member of the Federal Bureau of Investigation Cybercrime Task Force, where I work with FBI agents and task force officers of the FBI on cases involving unauthorized computer intrusions, cyber-related frauds, and the theft of personal identifying information, among other federal offenses. In my career, I have conducted multiple investigations involving money laundering and have obtained over a dozen seizure warrants for criminal proceeds and property involved in money laundering.

2. I am a graduate of the Criminal Investigator Training Program at the Federal Law Enforcement Training Center ("FLETC") in Glynco, Georgia, where I received training in topics involving federal criminal law, including criminal investigative techniques, financial crime investigation, and criminal procedure. I am a graduate of IRS-CI's Special Agent Investigative Techniques training program, through which I received training in investigating financial and tax crimes, investigating money laundering crimes, and seizing and forfeiting assets traceable to proceeds of crime or used to facilitate the commission of crimes. I have also completed advanced training programs in asset forfeiture and money laundering. I have a Bachelor of Science degree in consumer science with an emphasis in business from the University of Wisconsin – Madison and a Master of Business Administration degree from the University of Wisconsin – Eau Claire.

3. Because I am submitting this affidavit for the limited purpose of establishing probable cause for the requested seizure warrants, I have not included in this affidavit every detail I know about this investigation. Rather, I have included only the information necessary to establish probable cause for the requested seizure warrants.

4. The facts set forth in this affidavit are based on my personal knowledge, including what I have learned through my training and experience as a law enforcement officer, my review of documents and other records obtained in the course of this investigation, information I have obtained in the course of this investigation from witnesses having personal knowledge of the events and circumstances described herein, and from other law enforcement officers, all of whom I believe to be truthful and reliable.

## Property Sought to be Seized

5. I submit this affidavit in support of an application for warrants to seize the following:

   a. Up to $18,000 in funds from Cashier's Check number 95611390 drawn on Bank of America account ending in 2906, which was funded on January 11, 2019, by a transfer of funds from Bank of America account ending in 8402 ("CASHIER'S CHECK 1"); and

   b. Up to $18,000 in funds from Cashier's Check number 95611391 drawn on Bank of America account ending in 2906, which was funded on January 11, 2019, by a transfer of funds from Bank of America account ending in 8402 ("CASHIER'S CHECK 2").

6. For the reasons set forth below, I submit that the above-described funds are proceeds of, and traceable to, a wire fraud offense or offenses committed in violation of 18 U.S.C § 1343, and therefore are subject to:

   a. Civil forfeiture under 18 U.S.C §§ 981(a)(1)(C) and 984, including cross-references to 18 U.S.C. §§ 1956(c)(7) and 1961(1);

   b. Criminal forfeiture under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c); and

   c. Seizure via a civil seizure warrant under 18 U.S.C. § 981(b)(2) and via a criminal seizure warrant under 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(f).

## Facts Supporting Findings of Probable Cause for Issuance of Seizure Warrants

7. Children's Healthcare of Atlanta ("CHOA") is a children's healthcare provider based in Atlanta, Georgia. J.E. Dunn Construction Company ("JE DUNN") is a construction company based in Kansas City, Missouri. At all times relevant to this matter, JE DUNN was a contractor hired by CHOA to assist in the construction of CHOA facilities.

8. On or about November 21, 2018, the CHOA accounts payable department received an email purporting to be from an individual having the initials B.S., the Chief Financial Officer of JE DUNN, requesting the direct deposit/ACH authorization form to update JE DUNN's banking information. This email was sent from the email address XXXXXup@jedunn.org, while JE DUNN's actual email domain was XXXXXup@jedunn.com.

9. On December 17, 2018, XXXXXup@jedunn.org emailed the CHOA accounts payable department a letter requesting a bank account change and a completed IRS Form W-9. The letter appeared to be on JE DUNN letterhead. The letter instructed CHOA to change JE DUNN's account to Wells Fargo Bank NA account ending in 1993 ("WF 1993"). The letter was allegedly signed by B.S., Chief Financial Officer, and G.N., Executive Vice President, for

2

JE DUNN. The IRS Form W-9 appeared to provide the correct company information for JE DUNN and appeared to have been signed by B.S.

10. Based on the information provided CHOA from XXXXXup@jedunn.org, including the letter and IRS Form W-9, CHOA changed the bank account for payments made to JE DUNN to WF 1993.

11. On December 27, 2018, CHOA transferred $3,562,164.00 to WF 1993 as payment for construction services performed by JE DUNN.

12. On or about January 10, 2019, JE DUNN contacted CHOA inquiring about the $3,562,164.00 payment that JE DUNN had not yet received. Based on this inquiry, CHOA discovered the fraudulent scheme in which CHOA was deceived into changing JE DUNN's account to WF 1993. CHOA contacted the Federal Bureau of Investigation.

13. CHOA reported the incident to their bank, who contacted Wells Fargo in an attempt to reverse the fraudulent transfer to WF 1993. On or about February 4, 2019, Wells Fargo notified CHOA's bank that $2,592,147.63 remained in WF 1993 and would be transferred back to CHOA's account.

14. A review of Wells Fargo records showed that WF 1993 was opened at a branch in Milwaukee, Wisconsin, on August 29, 2018. The account was owned by Choate Solutions, Inc. with one authorized signer having the initials M.T. On December 27, 2018, WF 1993 received an incoming transfer of $3,562,164.00 from CHOA's bank account.

15. After WF 1993 received the transfer, approximately 13 checks were written from WF 1993 to various payees. Of these checks, three checks were ultimately paid, one of which was a check payable to T.A. Sourcing Inc. for $650,000.00, negotiated at Bank of America NA ("SOURCE CHECK 1").

16. On February 21, 2019, agents contacted Bank of America NA. A bank representative having the initials B.F. confirmed that SOURCE CHECK 1 had been deposited into BOA 8402 and that $604,021.46 in funds remained in the account. The funds were frozen pending further law enforcement activity. On March 19, 2019, the government obtained a seizure warrant to recover these funds.

17. Agents learned that on January 11, 2019, $36,000 in funds were transferred from BOA 8402 to the Bank of America cashier's check issuance account ending in 2906, from which two cashier's checks, CASHIER'S CHECK 1 and CASHIER'S CHECK 2 were issued for $18,000 each. I therefore submit that these funds are traceable, in whole, to proceeds of the business e-mail compromise fraud scheme.

18. According to Bank of America, as of March 28, 2019, CASHIER'S CHECK 1 and CASHIER'S CHECK 2 have not been negotiated. These cashier's checks, each in the amount of $18,000, are the subjects of the two seizure warrant applications.

19. When opening WF 1993, M.T. presented a North Carolina identification card. A check of North Carolina records show the identification card number is not valid. North Carolina did not have identification card records for the name M.T.

20. I contacted an individual having the initials T.W., Executive Vice President and General Counsel for JE DUNN. T.W. confirmed that:

    a. No one at JE DUNN had emailed CHOA to request that JE DUNN's account be changed;

    b. JE DUNN did not control WF 1993 and did not request any funds from CHOA be transferred into WF 1993;

    c. The emails from XXXXXup@jedunn.org were fraudulent;

    d. The letter on JE DUNN letterhead requesting the CHOA accounts payable department to direct payments for JE DUNN to WF 1993 was fraudulent; and

    e. The signatures of B.S. and G.N. on that letter were forgeries.

21. I contacted an individual having the initials T.B., Vice President of Corporate Finance for CHOA, who confirmed that CHOA did not consent to the December 27, 2018, transfer of $3,562,164.00 to any party other than JE DUNN.

## Applicable Asset Forfeiture Provisions

22. Under 18 U.S.C. § 984, a court may order the forfeiture of funds in a bank account into which monies subject to forfeiture have been deposited, without the need to trace the funds currently in the account to the specific deposits that are subject to forfeiture, up to the amount of the funds subject to forfeiture that have been deposited into the account within the past one-year period.

23. Section 984 (a) provides in part:

> (1) In any forfeiture action in rem in which the subject property is cash [or] funds deposited in an account in a financial institution
>
> > (A) it shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for the forfeiture; and
> >
> > (B) it shall not be a defense that the property involved in such an offense has been removed and replaced by identical property.

4

(2) Except as provided in subsection (c), any identical property found in the same place or account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture under this section.

24. 18 U.S.C. § 984(b) provides: "No action pursuant to this section to forfeit property not traceable directly to the offense that is the basis for the forfeiture may be commenced more than 1 year from the date of the offense."

25. Thus, under Section 984, a court may order the civil forfeiture of monies found in a bank account into which deposits of criminal proceeds subject to forfeiture had been made, up to the amount of the forfeitable deposits that have been made into the account within the prior one-year period, without the need for tracing the funds to be forfeited to any of the specific forfeitable deposits.

26. I submit that a restraining order under 21 U.S.C. § 853(e) may not be sufficient to assure the availability of the funds for forfeiture because I have been advised of cases in which, even after a restraining order or similar process has been issued to a financial institution, the funds sought to be restrained were not effectively restrained by the financial institution. In my judgment, seizure warrants would be the most effective way to assure the availability of the monies sought to be seized for forfeiture.

## Conclusion

27. Based on the facts and circumstances set forth in this affidavit, I submit that there exists probable cause to believe that CASHIER'S CHECK 1 and CASHIER'S CHECK 2, each in the amount of $18,000, are:

   a. Funds traceable to, and are therefore proceeds of, a wire fraud offense or offenses, committed in violation of 18 U.S.C. § 1343;

   b. Subject to civil forfeiture under 18 U.S.C. §§ 981(a)(1)(C) and 984, including cross-references to 18 U.S.C. §§ 1956(c)(7) and 1961(1);

   c. Subject to criminal forfeiture under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c); and

   d. Subject to seizure via a civil seizure warrant under 18 U.S.C. § 981(b)(2) and via a criminal seizure warrant under 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(f).

###